IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| TRINIDAD C. ENRIQUEZ, | ) | CIVIL NO. 10-00405 LEK-RLP |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| COUNTRYWIDE HOME LOANS, FSB; | ) | |
| TRINITY FINANCIAL, LLC, JOHN | ) | |
| DOES 1-100; JANE DOES 1-100, | ) | |
| AND DOE CORPORATIONS, | ) | |
| PARTNERSHIPS AND OTHER | ) | |
| ENTITIES 1-100, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT
COUNTRYWIDE HOME LOANS, FSB'S MOTION TO DISMISS,
OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**

Before the Court is Defendant Countrywide Home Loans, FSB's ("Countrywide") Motion to Dismiss, or in the Alternative, for a More Definite Statement ("Motion"), filed on March 28, 2011. Plaintiff Trinidad C. Enriquez ("Plaintiff") filed her memorandum in opposition on July 8, 2011. This matter came on for hearing on August 8, 2011. Appearing on behalf of Countrywide was Sophia Harrison, Esq., and appearing on behalf of Plaintiff was Robin Horner, Esq. After careful consideration of the Motion, supporting and opposing memoranda, and the arguments of counsel, Countrywide's Motion is HEREBY GRANTED IN PART AND DENIED IN PART for the reasons set forth below.

Plaintiff filed her Complaint in the instant predatory lending case on July 16, 2010. Plaintiff states that she purchased her family home, 16-2086 Tiki Lane, Keaau, HI 96749 ("the Property"), prior to 2007. [Complaint at ¶¶ 11, 15.] According to Plaintiff, the lender for her original mortgage was "Countrywide Home Loans, part of the family of companies of Countrywide Bank, FSB." [Id. at ¶ 16.[1]] Plaintiff had difficulty making her payments, [id. at ¶ 17,] and "sought financial relief from Countrywide Home Loans and Countrywide Bank" [id. at ¶ 18]. Plaintiff states that she applied for a thirty-year, fixed-rate loan through a mortgage broker, Defendant Trinity Financial LLC ("Trinity") and its agent, Joey Pagan. [Id. at ¶¶ 18-19.]

Plaintiff alleges that she "placed her trust and confidence in Defendants to properly qualify her for a loan and to provide her with the most favorable program or terms." [Id. at ¶ 20.] She alleges that Countrywide and Trinity (collectively "Defendants") failed to provide her with: an initial truth in lending statement; an initial good faith estimate; a copy of her signed and dated Uniform Residential Loan Application; various

---

[1] The Court notes that the caption of the Complaint identifies Countrywide Home Loans, FSB and Trinity Financial, LLC as the defendants, but paragraph 2 of the Complaint only refers to "Defendant COUNTRYWIDE BANK, FSB", not Countrywide Home Loans, FSB.

disclosures and notices about her credit; various underwriting documents including the appraisal, her credit report, a preliminary title report, notice of her right to cancel, and a final settlement statement; various disclosures about her privacy rights; and various disclosures about her consumer rights. [Id. at ¶¶ 21-22, 34, 53, 56.]

Further, Plaintiff claims that Defendants: failed to follow generally accepted underwriting standards when they qualified her for her loan; changed the terms of the loan she applied for; falsified her income in her loan application and failed to verify the income reflected on the application; failed to disclose that they were treating her application as a stated income application; failed to disclose that Plaintiff was not properly qualified for the loan and was likely to default; failed to disclose that the loan had an excessive debt to income ratio of 60.11%; used incorrect information about her first mortgage in calculating her housing expenses; and failed to disclose the interest rate that she would have to pay over the life of the loan. [Id. at ¶¶ 23-33, 57.]

Although Plaintiff applied for a thirty-year, fixed rate mortgage amortized over thirty years, Defendants provided her with a thirty-year, fixed rate loan amortized over fifteen years, after a fifteen-year interest only period. Plaintiff alleges that Defendants failed to meaningfully disclose these

terms to her, and they failed to address whether she qualified for other, more suitable, loan programs. [Id. at ¶¶ 35-36, 39.] Thus, although her initial monthly mortgage payment was $729.61, it would increase to $1,062.37. Plaintiff emphasizes that she is on a fixed income totaling $1,382.59 per month. [Id. at ¶ 37.] Plaintiff contends that Defendants failed to disclose to her that she was likely to default on the loan and that "she was likely to become homeless on or before she reached the age of 88 years." [Id. at ¶ 38.]

Plaintiff alleges that Defendants knew or should have known that the appraised value of the Property was inflated and that Defendants failed to either provide her with a copy of the appraisal or notify her that she was entitled to a copy. Defendants also failed to disclose to her that the appraisal was improperly prepared. Further, Defendants knew or should have known that the housing market was declining and that further decline was likely, jeopardizing Plaintiff's equity and the likelihood of a future sale or refinance. Defendants failed to disclose this information to Plaintiff. [Id. at ¶¶ 40-45.] Plaintiff claims that, through their misrepresentations and omissions, Defendants deliberately concealed the terms of the loan to her. Plaintiff therefore did not understand the true terms of the loan they offered her. [Id. at ¶¶ 51-52.]

Plaintiff also alleges that Defendants failed to

disclose that they intended to securitize and sell her loan and failed to disclose endorsements of her promissory note and assignments of her mortgage. [Id. at ¶¶ 48-49.] Plaintiff alleges that Defendants failed to properly notify her of and record transfers of her note and mortgage. Thus, Plaintiff contends that it is unclear who is entitled to enforce the note and mortgage.

Plaintiff states that she "sent Defendants or one or more of them a qualified written request and a demand letter and Defendants have failed to respond to said letter." [Id. at ¶ 50.] Plaintiff also states that she experienced loan distress and approached Defendants about a loan modification, but they refused to deal with her in good faith. [Id. at ¶¶ 59-60.]

Plaintiff asserts the following claims: Count I - violation of the Home Ownership Equity Protection Act, 15 U.S.C. § 1639, et seq. ("HOEPA"); Count II - violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601 et seq. ("RESPA"); Count III - violation of the Federal Truth in Lending Act, 15 U.S.C. § 1601 et seq. ("TILA"); Count IV - violation of the Fair Credit Reporting Act, in violation of 15 U.S.C. § 1681 et seq. ("FCRA"); Count V - fraudulent misrepresentation; Count VI - breach of fiduciary duty; Count VII - civil conspiracy; Count VIII - a civil claim for a Racketeer Influenced and Corrupt Organizations Act ("RICO") violation, under 18 U.S.C. § 1962(c);

Count IX - quiet title; Count X - mistake; Count XI -
unconscionability; Count XII - unfair and deceptive acts or
practices ("UDAPs"), in violation of Haw. Rev. Stat. § 480-2 and
§ 481A-3; Count XIII - failure to act in good faith; Count XIV -
recoupment; Count XV - negligent and/or intentional infliction of
emotional distress ("NIED/IIED"); Count XVI - violation of the
Gramm-Leach-Bliley Act ("GLBA"), in violation of 15 U.S.C. §
6801, *et seq.*; Count XVII - violation of the right to privacy
under the Hawai`i Constitution; Count XVIII - violation of "Equal
Credit Opportunity (Regulation B)"; and Count XIX - violations of
the Credit Repair Organizations Act, 15 U.S.C. § 1679a, *et seq.*
("CROA").

    Plaintiff seeks the following: a judgment of
rescission; statutory, actual, treble, and punitive damages; a
temporary restraining order or injunctive relief; a judgment of
recoupment, reimbursement and/or indemnification; and any other
appropriate relief.

## I.   Motion

    In the instant Motion, Countrywide argues that each
count of the Complaint fails to state a claim upon which relief
can be granted.  Countrywide urges the Court to dismiss all of
Plaintiff's claims with prejudice.  If any counts survive
dismissal, Countrywide asks that the Court order Plaintiff to
file a more definite statement.

A. **Federal Statutory Claims**

1. **Count I (HOEPA)**

Countrywide first argues that Plaintiff's HOEPA claim is time-barred because Plaintiff consummated her loan transaction on July 18, 2007,[2] but did not file the instant Complaint until July 16, 2010. Further, Plaintiff's loan was not the type of "high cost" refinancing transaction that HOEPA applies to. [Mem. in Supp. of Motion at 5 (citing 15 U.S.C. Sections 1602(aa), 1639; 12 C.F.R. Section 226.32(a)(1)).] As to Plaintiff's allegation that Defendants engaged in a pattern and practice of extending credit to Plaintiff without regard to her ability to make the loan payments, Countrywide argues that Plaintiff has merely raised conclusory allegations that are insufficient to state a claim.

2. **Count II (TILA)**

Countrywide argues that Plaintiff's TILA claim seeking damages is time-barred. As to Plaintiff's TILA recession claim, Countrywide argues that, even if the original lender failed to give Plaintiff the required TILA disclosures, she does not have a claim for rescission because she did not give proper notice of rescission and she has not alleged that she has the present ability to repay the loan. Countrywide therefore argues that

---

[2] The Court notes that neither side has presented a copy of Plaintiff's promissory note or mortgage.

7

Plaintiff's TILA rescission claim is not ripe. [<u>Id.</u> at 6-8.]

### 3. **Count III (RESPA)**

Countrywide argues that Plaintiff's RESPA claim is time-barred because she failed to bring it within one year of the date of the alleged violation, which occurred at the loan consummation. Plaintiff has not alleged any facts that would support equitable tolling of the statute of limitations. Even if Plaintiff's RESPA claim was not time-barred, Plaintiff's conclusory allegations that Countrywide accepted real estate service charges that were for purposes other than for the actual performance of services are not enough to meet the Fed. R. Civ. P. 8 standard. [<u>Id.</u> at 8-9.]

### 4. **Count IV (FCRA)**

Plaintiff alleges that Defendants illegally reported negative credit information about her to one or more credit reporting agencies. Countrywide acknowledges that, under 15 U.S.C. §§ 1681n and 1681o, there is civil liability for willful and negligent failure to comply with the requirements of the FCRA. [<u>Id.</u> at 9.] Countrywide also acknowledges that, under the FCRA, it is required to provide accurate information and to investigate the accuracy of reported information after notice of a dispute. [<u>Id.</u> at 10 (citing 15 U.S.C. § 1681s-2(a), (b)).] Countrywide, however, argues that there is no private right of action to address alleged violations of the duty to provide

accurate information.  [<u>Id.</u> (some citations omitted) (citing 15
U.S.C. § 1681s-2(d)).]

Even if Plaintiff has a right of enforcement, she has
failed to specify which Defendants acted negligently as opposed
to willfully, and she has failed to specify what actions were
willful and when they occurred.  Countrywide therefore argues
that Plaintiff's FCRA claim fails as a matter of law because she
has not presented sufficient allegations to meet her burden under
Rule 8.  [<u>Id.</u> at 10.]

### 5.   <u>Count XVIII (ECOA)</u>

Plaintiff alleges that Defendants failed to provide her
with copies of her loan application and the appraisal report and
that this violated the ECOA.  [<u>Id.</u>]  Countrywide, however, argues
that 15 U.S.C. § 1691(e) requires only that a creditor provide a
copy of the appraisal report upon the applicant's written request
a reasonable time after the loan application.  Plaintiff does not
state when, or if, she made such a written request.  Further, she
did not identify any specific acts by Countrywide that support
this claim.  [<u>Id.</u> at 11.]

### 6.   <u>Count VIII (RICO)</u>

Plaintiff's civil RICO claim fails because she has not
alleged facts that would establish the elements of a civil RICO
violation.  Countrywide also argues that Plaintiff does not have
standing to allege a RICO claim because she has not suffered a

direct injury that was proximately caused by the predicate racketeering activity.  [<u>Id.</u> at 20-21.]

### 7.  <u>Count XVI (GLBA)</u>

Countrywide argues that there is no private right of action for a GLBA violation.  [<u>Id.</u> at 22 (citations omitted).]

### 8.  <u>Count XIX (CROA)</u>

Countrywide argues that this claim fails because it is not a "credit repair organization" as defined under the CROA, and it has not engaged in any of the activities set forth under the CROA.  [<u>Id.</u> at 22-23 (citing 15 U.S.C. 1679a(3)).]

### B.  <u>Fraud-based Claims</u>

Countrywide argues that Plaintiff's Complaint does not satisfy the heightened pleading standard for fraud claims pursuant to Fed. R. Civ. P. 9 and the applicable case law.  Count V (fraudulent misrepresentation) improperly raises allegations against both Defendants without identifying which defendant allegedly participated in which fraudulent scheme and how that defendant participated in the scheme.  Countrywide argues that the Complaint fails to set forth the "who, what, when, where, and how" of the alleged fraud.  [<u>Id.</u> at 12]

Count X (mistake) alleges that, if there was no fraud, the parties entered into the transaction based on mutual mistake. Countrywide also argues that Count X is conclusory and lacks the required particularity under Rule 9(b).  [<u>Id.</u> at 13.]

As to Count XII (UDAP), Countrywide emphasizes that lenders generally owe no duty to borrowers to place them in loans that they can afford.  Countrywide alleges that Count XII fails because the Complaint does not contain any allegations that Countrywide exceeded its role as a lender.  [Id. at 13-14.]

Countrywide also argues that Count XVII (violation of Hawai`i constitutional right to privacy) fails because, although Plaintiff alleges that Defendants' failure to provide the required notices of her privacy rights was part of a fraudulent scheme, Plaintiff failed to meet the heightened pleading standard under Rule 9(b).  [Id. at 23.]

C.    **Other State Law Claims**

Countrywide argues that Count VI (breach of fiduciary duty) fails as a matter of law because Countrywide's relationship with Plaintiff is purely a contractual relationship between a borrower and a lender.  There is no special relationship between them that would create a fiduciary duty.  [Id. at 14.]

Count IX (quiet title) is merely a disguised request for injunctive and declaratory relief.  Countrywide emphasizes that a request for injunctive relief is not a cause of action and it must be brought in a separate motion.  Even if the Court construes Count IX as a derivative claim, Plaintiff would have to show that the case meets all of the requirements for injunctive relief.  Countrywide argues that Plaintiff cannot meet this

burden.  [Id. at 14-15.]

Similarly, Count XI (unconscionability) is not an affirmative claim for relief; it is a defense to the enforcement of a contract.  Even if an affirmative claim exists, Countrywide argues that Count XI still fails because Plaintiff has not identified any term in the loan agreement that is unconscionable. [Id. at 15.]

Count XIII (failure to act in good faith) also fails to state a claim because the covenant of good faith and fair dealing does not create an independent cause of action.  Even if it did, the covenant applies to the performance and execution of a contract; it does not apply to pre-consummation activities like the ones alleged in Plaintiff's Complaint.  [Id. at 16.]

Countrywide argues that Count XIV (recoupment) fails because recoupment is a defense, not an affirmative claim for relief.  [Id. at 22.]

Countrywide contends that Count XV (NIED/IIED) is barred by the two-year statute of limitations under Haw. Rev. Stat. § 657-7.  Further, damages for emotional distress are not available because the parties' contract did not specifically provide for them and the parties did not contemplate or expect such damages.  [Id. at 17 (citing Francis v. Lee Enter., Inc., 971 P.2d 707, 713 (Haw. 1999)).]  Plaintiff's NIED claim also fails because she has not alleged a physical injury or property

damage as required by Haw. Rev. Stat. § 663-8.9.  Plaintiff's

IIED claim fails because she has not alleged any facts that would

establish the elements of that claim.  [Id. at 17-18.]

Finally, Countrywide argues that Count VII (civil

conspiracy) fails because Plaintiff has not alleged sufficient

facts supporting the existence of a conspiracy, nor has she

alleged an actionable underlying tort.  [Id. at 19-20.]

## II.  **Memorandum in Opposition**

In her memorandum in opposition, Plaintiff notes that

her loan was a "stated loan", meaning that Countrywide "did not

use due diligence to verify the information necessary to

calculate [Plaintiff's] debt to income ratio ("DTI"), i.e. her

income, debt, and asset information."  [Mem. in Opp. at 3.]

Plaintiff argues that her DTI of 60.11% significantly exceeded

customary DTI ratios of 45%.  [Id.]  She also alleges that she

was "rushed through the closing" and that she was not given the

opportunity to ask questions or to read documents given to her to

sign.  Further, Countrywide did not explain to her that she

should compare the proposed loan terms with other loans that

Countrywide and other lenders offered, nor did Countrywide give

her the opportunity to do so.  [Id. at 4.]

Plaintiff also states that Bank of America Home Loans

("BOA") was the servicer of her loan, and she alleges that BOA

failed to act in good faith.  According to Plaintiff, on July 16,

13

2010, she submitted a Qualified Written Request ("QWR") to BOA pursuant to RESPA, 12 U.S.C. § 2605. The QWR also contained a loan modification request. Plaintiff states that, as of the date of her memorandum in opposition, BOA had not approved her loan modification. [Id. at 5-6.] Plaintiff contends that "BOA takes subject to the defenses against" Countrywide because of BOA's purchase of Countrywide and because BOA had knowledge of Countrywide's "precarious financial situation and fraudulent and deceptive acts[.]" [Id. at 7.]

Plaintiff argues that all of the counts of her Complaint meet the requirements of Fed. R. Civ. P. 8. Plaintiff argues that, after discovery and after the completion of the updated expert reports, she will be able to prove her causes of action. Plaintiff also requests leave to amend her Complaint, including to add BOA as a defendant. [Id. at 10-11.]

### A.   Count I (HOEPA)

Plaintiff argues that her refinancing loan is a "high cost" loan subject to HOEPA because of: the fifteen years of interest-only payments and the amortization over fifteen years instead of over thirty years; the excessive fees for a sub-prime loan; and the fact that she should have qualified for a standard mortgage due to her excellent credit rating at the time of application. She also argues that equitable tolling applies. [Id. at 11-12.]

14

**B.  Counts II (RESPA), III (TILA), XVIII (ECOA), XIX (CROA)**

Plaintiff alleges that equitable tolling applies to all of these claims, and therefore they are not time-barred.  [Id. at 12.]  Plaintiff alleges that "she was 'tricked' or induced by the lender's misconduct into letting the filing deadline pass."  [Id. at 14.]  The misconduct she relied upon primarily relates to the loan origination, except that she also alleges that "the lender" improperly assigned, transferred, or sold her loan and failed to respond to her QWR.  [Id.]  She alleges that she did not have a reasonable opportunity to discover the fraud, concealment, and non-disclosures which form the basis of her claims until 2009 when the media began publicizing the mortgage crisis.  As soon as she heard about the national problem, she ordered a "forensic" audit of her loan and discovered that the basis of her claims in this case.  Plaintiff therefore argues that the three-year statute of limitations should be tolled.  [Id. at 14-15.]  She also contends that she may be able to show further trickery because some lenders are intentionally waiting to notify borrowers of default until after the three-year period has passed or are leading distressed borrowers to believe that they will consider loss mitigation or loan modification.  Plaintiff asserts that her updated securitization and forensic loan reports may reveal that Countrywide and/or BOA intentionally waited to take action against her until after the three-year limitations period.

[<u>Id.</u> at 15-16.]

Plaintiff also claims that the lender and its successors: have not been disclosing the sale of loans within the thirty to forty-five day period set forth in most pooling and serving agreements ("PSA"); and have been waiting to assign mortgages until just prior to a foreclosure, usually contrary to the requirements of the PSA. Plaintiff states that it appears that Countrywide/BOA assigned her mortgage to "CWABS, Inc.", with the Bank of New York as trustee for the certificates trust, on or about August 13, 2007, but she does not know whether there was a violation of the PSA. Plaintiff argues that, where undisclosed transfers, sales, and/or assignments occur, the borrower may contact the wrong entity when seeking to resolve loan issues and will waste time dealing with an entity that has no authority to modify the loan. Plaintiff contends that this is another reason to apply equitable tolling. [<u>Id.</u> at 17.]

Plaintiff argues that her TILA claim for damages based on the denial of her request for rescission is timely because she notified Countrywide/BOA of her intent to rescind in the July 16, 2010 QWR and she filed her Complaint prior to the denial of the request for rescission. [<u>Id.</u> at 17-18.]

She also emphasizes that an unsophisticated borrower is at the mercy of the lender and must put her trust in the lender to offer her the best loan that she is properly qualified for

based on the appraised value of the property.  Plaintiff stresses

that she did not have the opportunity to review either the loan

application, which the lender filled out, or the appraisal, and

therefore she could not determine whether the value of the

Property supported the loan.  [Id. at 19-21.]

Plaintiff contends that civil liability under the ECOA

is clear in this case, as are Countrywide's and BOA's obligations

under the FCRA, the Fair and Accurate Credit Transaction Act, and

the CROA.  Plaintiff argues that Countrywide should be able to

respond to her general allegations that it has violated these

statutes.  If the Court feels that she must make her claims more

clear, she requests the opportunity to amend her Complaint after

discovery.  [Id.]

### C. Counts V (fraudulent misrepresentation), X (mistake), XI (unconscionability), and XII (UDAP)

Plaintiff alleges that there was fraud in the loan

origination process, the loan modification process, the sale and

transfer/assignment of her loan, and in the foreclosure process.

Plaintiff argues that the Complaint alleges specific acts and

omissions by Countrywide/BOA and Trinity that constitute fraud,

including overstating her income and failing to disclose material

terms of the loan.  She argues that she will be able to provide

further specific facts about who engaged in what fraudulent

activity after discovery.  [Id. at 21-23.]

Plaintiff argues that Defendants' actions constitute

17

UDAPs, bad faith, and breaches of Defendants' special relationship with unsophisticated borrowers. Count X alleges that, if the Court finds that Defendants' conduct did not rise to those levels, it at a minimum establishes that the parties were mutually mistaken about material contract terms, rendering the loan agreement void and Plaintiff's promissory note and mortgage invalid and unenforceable. Plaintiff argues that Count X is sufficiently pled. [Id. at 23-24.]

Similarly, Plaintiff contends that Defendants' conduct shocks the conscious, rendering the contract unconscionable and therefore unenforceable. Plaintiff argues that Count XI is sufficiently pled. [Id. at 24-25.] Plaintiff also argues that she has alleged wrongful acts and omissions of material facts and documents by the lender that are imputed to the lender's successors, including BOA. Plaintiff argues that Count XII is sufficiently pled. [Id. at 25-26.]

### D. Count VI (breach of fiduciary duty) and Count XIII (failure to act in good faith)

Plaintiff notes that some courts have found that a fiduciary relationship exists where the there was an imbalance of power in the debtor-creditor relationship and the borrower put her trust in the lender, particularly where the lender has legal departments and third-party vendors at its disposal and the borrower either does not realize that she needs her own legal representation or she cannot afford it. The fiduciary duty gives

18

rise to a duty to make a fair and honest disclosure of all facts that might influence the borrower's decision whether to accept the loan.  [Id. at 26-27 (citation omitted).]  Plaintiff argues that the Court should find a fiduciary relationship in this case.

Even in the absence of a fiduciary relationship, Plaintiff emphasizes that every contract in Hawai`i has an implied duty of good faith and fair dealing.  Plaintiff contends that Countrywide/BOA's failure to grant loan modification when she diligently worked with them in the process was in bad faith. [Id. at 27-29.]

### E.    Count VII (civil conspiracy) and Count VIII (RICO)

Plaintiff argues that the securitization process is designed to shield investors from liability for the lender's misconduct in the origination process.  She claims that Countrywide/BOA conspired with undisclosed third parties to securitize and sell her note and mortgage in spite of the defects in her loan origination process so that they could benefit and profit without regard to the expense to Plaintiff.  She states that her current securitization report shows, *inter alia*, that: there were sales and transfers of her loan without assignments of her mortgage; her note and/or mortgage passed though the hands of many entities without proper disclosure; some the transferees had no assets and therefore could not have actually bought her loan; Plaintiff's loan was part of a "Warehouse Line of Credit"

19

operated by a Wall Street firm in which money was indiscriminately made available to virtually any adult applicant; and the PSA required endorsements of Plaintiff's original promissory note in the event of a transfer, but there probably no proper endorsements in this case. Plaintiff states she will be able to present more facts after discovery. [Id. at 29-34.]

Similarly, Plaintiff argues that Countrywide/BOA are "enterprise defendants", as defined under the RICO statutes, who conspired to defraud her. Plaintiff therefore argues that Count VIII is sufficiently pled. [Id. at 34.]

**F.    Other State Law Claims**

For the reasons stated in the discussion of the conspiracy claim, Plaintiff argues that there is likely a break in the chain of title to the Property and that Defendants cannot produce the original promissory note. She therefore claims that any right that Countrywide/BOA or another party may have to the Property is void, particularly in light of her notice of intent to rescind. Plaintiff asserts that Count IX (quiet title) is properly pled. [Id. at 34-35.]

As to Count XIV (recoupment), Plaintiff notes that, under the Uniform Commercial Code, Haw. Rev. Stat. § 490:3-305, a successor takes subject to claims and defenses including recoupment and fraud in the inducement. Plaintiff also appears to assert that she has stated a claim for TILA recoupment.

Plaintiff argues that she has sufficiently pled her recoupment claims, either under existing law or under a good faith argument for a change in the law in this developing area of illegal mortgage practices. She states that, however the Court construes the recoupment claim, she is entitled to recover monies that she should not have paid. [Id. at 36-37.]

As to her NIED/IIED claim, Plaintiff argues that she has alleged outrageous conduct, including the falsification of her income on the loan application and the replacement of the fifteen-year interest-only/fifteen-year amortized product for the thirty-year amortized loan that she was promised. In the alternative, Plaintiff argues that outrageous conduct is not required. Countrywide/BOA knew what happened with her loan origination process and intentionally and/or negligently caused her emotional distress by failing to grant her loan modification application while leading her to believe that they would grant it. Plaintiff contends that these allegations are sufficient to survive dismissal. [Id. at 37-38.]

## G.  Count XVI (GLBA)

Finally, Plaintiff states that she has alleged, based upon information and belief, that Countrywide/BOA or other third parties failed to inform her of her rights under the GLBA and that they improperly shared her private and confidential information with unaffiliated parties. If the Court feels that

Plaintiff must make this claim more clear, Plaintiff requests the opportunity to amend her Complaint. [Id. at 35-36.]

**STANDARDS**

## I.    Federal Rule of Civil Procedure 12(b)(6)

Fed. R. Civ. P. 12(b)(6) permits a motion to dismiss a claim for "failure to state a claim upon which relief can be granted[.]"

> Under Rule 12(b)(6), review is generally limited to the contents of the complaint. Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001). If matters outside the pleadings are considered, the Rule 12(b)(6) motion is treated as one for summary judgment. See Keams v. Tempe Tech. Inst., Inc., 110 F.3d 44, 46 (9th Cir. 1997); Anderson v. Angelone, 86 F.3d 932, 934 (9th Cir. 1996). However, courts may "consider certain materials-documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice-without converting the motion to dismiss into a motion for summary judgment." United States v. Ritchie, 342 F.3d 903, 908 (9th Cir. 2003).
> On a Rule 12(b)(6) motion to dismiss, all allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party. Fed'n of African Am. Contractors v. City of Oakland, 96 F.3d 1204, 1207 (9th Cir. 1996). To survive a motion to dismiss, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, --- U.S. ----, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not

suffice." <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 554, 127 S. Ct. 1955).

<u>Hawaii Motorsports Inv., Inc. v. Clayton Group Servs., Inc.</u>, 693 F. Supp. 2d 1192, 1195-96 (D. Hawai`i 2010).

This Court, however, notes that the tenet that the court must accept as true all of the allegations contained in the complaint – "is inapplicable to legal conclusions." <u>Iqbal</u>, 129 S. Ct. at 1949. Factual allegations that only permit the court to infer "the mere possibility of misconduct" do not show that the pleader is entitled to relief. <u>Id.</u> at 1950.

"Dismissal without leave to amend is improper unless it is clear that the complaint could not be saved by any amendment." <u>Harris v. Amgen, Inc.</u>, 573 F.3d 728, 737 (9th Cir. 2009) (citation and quotation marks omitted).

## II. <u>**Federal Rule of Civil Procedure 9(b)**</u>

Fed. R. Civ. P. 9(b) requires that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Rule 9(b) requires that a party make particularized allegations of the circumstances constituting fraud. <u>See</u> <u>Sanford v. MemberWorks, Inc.</u>, 625 F.3d 550, 557-58 (9th Cir. 2010).

In order to sufficiently plead a fraud claim, the plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice." <u>Shroyer v. New Cingular Wireless Servs., Inc.</u>, 622

F.3d 1035, 1042 (9th Cir. 2010) (citation omitted).  "Malice,
intent, knowledge, and other conditions of a person's mind may be
alleged generally."  Fed. R. Civ. P. 9(b); see also Odom v.
Microsoft Corp., 486 F.3d 541, 554 (9th Cir. 2007) (en banc)
("[T]he state of mind - or scienter - of the defendants may be
alleged generally." (citation omitted)); Walling v. Beverly
Enters., 476 F.2d 393, 397 (9th Cir. 1973) (stating that Rule
9(b) "only requires the identification of the circumstances
constituting fraud so that the defendant can prepare an adequate
answer from the allegations" (citations omitted)).

A motion to dismiss for failure to plead with
particularity is "the functional equivalent of a motion to
dismiss under Rule 12(b)(6)[.]"  Vess v. Ciba-Geigy Corp. USA,
317 F.3d 1097, 1107 (9th Cir. 2003).  In considering a motion to
dismiss, the court is not deciding whether a claimant will
ultimately prevail but rather whether the claimant is entitled to
offer evidence to support the claims asserted.  Twombly, 550 U.S.
at 563 n.8 (citation omitted).

## DISCUSSION

## I.  Federal Statutory Claims

### A.  Count I (HOEPA) and Count III (TILA)

HOEPA applies if the mortgage is

a consumer credit transaction that is secured by
the consumer's principal dwelling, other than a
residential mortgage transaction, a reverse

24

mortgage transaction, or a transaction under an
open end credit plan, if--
    (A) the annual percentage rate at
    consummation of the transaction will exceed
    by more than 10 percentage points the yield
    on Treasury securities having comparable
    periods of maturity on the fifteenth day of
    the month immediately preceding the month in
    which the application for the extension of
    credit is received by the creditor; or
    (B) the total points and fees payable by the
    consumer at or before closing will exceed the
    greater of--
        (i) 8 percent of the total loan amount;
        or
        (ii) $400.

15 U.S.C. § 1602(aa)(1). Section 1602(aa)(2) allows the Board of

Governors of the Federal Reserve System to make periodic

adjustments to the percentage in subsection (1)(A), and the Board

has reduced the rate to eight percent for first lien mortgages.

See, e.g., Yulaeva v. Greenpoint Mortg. Funding, Inc., No. CIV.

S-09-1504 LKK/KJM, 2010 WL 5394859, at *4 n.1 (E.D. Cal. Dec. 21,

2010).

    The Complaint, however, does not contain any

information about either the annual percentage rate at the

consummation of Plaintiff's mortgage or the total fees and costs

associated with the loan closing. Plaintiff's memorandum in

opposition to Countrywide's Motion states that the interest rate

was 6.625%. [Mem. in Opp. at 2.] The Court, however, notes that

Plaintiff did not submit any declarations, affidavits, or

documentation supporting this statement. Even if the Court

accepts that representation of the rate, it does not meet the

HOEPA threshold.  The memorandum in opposition does not contain any representation about the amount of points and fees Plaintiff paid in association with the closing.

Plaintiff has therefore failed to state a plausible HOEPA claim.  Further, Plaintiff's HOEPA claim may be time-barred.

HOEPA is an amendment to TILA and is therefore subject to the same statute of limitations.  <u>Herschelman v. New Century Mortg. Corp.</u>, Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *4 n.3 (D. Hawai`i Oct. 29, 2010) (citation omitted).  TILA claims seeking damages are subject to a one-year statute of limitations that begins to run from the date the loan is consummated, but the doctrine of equitable tolling may extend that period.  15 U.S.C. § 1640(e); <u>Cannon v. US Bank, NA</u>, Civ. No. 11-00079 HG-BMK, 2011 WL 1637415, at *5 (D. Hawai`i Apr. 29, 2011) (citing <u>King v. California</u>, 784 F.2d 910, 915 (9th Cir. 1986)).  Where the borrower allegedly did not receive the required TILA disclosures, the borrower must bring his rescission claim within three years after the loan consummation.  The three-year period is a statute of repose, which is not subject to equitable tolling.  15 U.S.C. § 1635(f); <u>Cannon v. US Bank</u>, 2011 WL 1637415, at *6 (some citations omitted) (citing <u>Miguel v. Country Funding Corp.</u>, 309 F.3d 1161, 1164 (9th Cir. 2002)).

The Complaint does not state when Plaintiff consummated

the loan at issue in this case. Countrywide's Motion states that Plaintiff consummated the loan on July 16, 2007, but Countrywide did not submit any declarations, affidavits, or documentation supporting this statement. Plaintiff did not contradict Countrywide's representation of the consummation date. The Court will therefore accept Countrywide's representation for the purposes of the instant Motion.

The Court, however, reminds Countrywide and its counsel that, as the moving party, it was Countrywide's burden to establish that it was entitled to the relief requested in the Motion, particularly where the relief is based upon grounds for an affirmative defense, such as statute of limitations. Although the Court understands their consternation with the number of similar cases with similar defects in the complaint, this does not reduce a defendant's obligation on a motion to dismiss. The Court therefore cautions Countrywide and its counsel that the Court will not accept similar unsupported representations in future cases.

### 1. **Rescission**

Insofar as Plaintiff filed her Complaint on July 16, 2010, she brought her HOEPA and TILA rescission claim within the three-year statute of repose. It is therefore arguably possible for Plaintiff to cure the defect in her HOEPA rescission claim by amendment. Countrywide's Motion is therefore GRANTED IN PART AND

27

DENIED IN PART as to the portion of Count I asserting a HOEPA rescission claim, which is DISMISSED WITHOUT PREJUDICE.

As to Plaintiff's TILA rescission claim, Countrywide argues that the claim is not ripe because Plaintiff did not give Countrywide any prior notice of her rescission request before filing suit. Instead, Plaintiff asserts that the Complaint is her "formal notice of rescission[.]" [Complaint at ¶ 83.] Countrywide contends that Plaintiff deliberately waited until filing her Complaint before giving notice of her intent to rescind because she knows that she cannot tender the amounts required for rescission. [Mem. in Supp. of Motion at 7-8.]

Defendant, however, cites no authority for the proposition that a TILA rescission claim is not ripe unless the borrower provided the lender with a rescission notice prior to the filing of the claim. Further, this district court has ruled that the ability to tender is not a required element for a plaintiff pleading a TILA rescission claim. This Court therefore FINDS that Plaintiff's Complaint alleges a plausible TILA rescission claim. Countrywide's Motion is DENIED as to the portion of Count III asserting a TILA rescission claim.

### 2. Damages

Plaintiff failed to file her HOEPA and TILA damages claim within the one-year statute of limitations. Plaintiff, however, argues that the Court should not dismiss her claims

because equitable tolling applies.

"The doctrine of equitable tolling preserves otherwise time-barred TILA claims where the Plaintiff's failure to file a timely lawsuit is based on excusable ignorance." Cannon v. US Bank, 2011 WL 1637415, at *5 (citing King, 784 F.2d at 915). The Ninth Circuit in King stated:

> [T]he doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action. Therefore, as a general rule, the limitations period starts at the consummation of the transaction. The district courts, however, can evaluate specific claims of fraudulent concealment and equitable tolling to determine if the general rule would be unjust or frustrate the purpose of the Act and adjust the limitations period accordingly.

784 F.2d at 915. Where the basis of equitable tolling is fraudulent concealment, the basis for tolling must be pled with particularity pursuant to Rule 9(b). Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *7 (D. Hawai`i Jan. 21, 2011) (citing 389 Orange St. Partners v. Arnold, 179 F.3d 656, 662 (9th Cir. 1999)). Further, a plaintiff cannot merely rely on the same factual allegations that would establish the statutory violation to invoke equitable tolling. Hoilien v. Bank of Am., Civil No. 10-00760 JMS/BMK, 2011 WL 2518731, at *6 (D. Hawai`i June 23, 2011) (citing Garcia v. Wachovia Mortg. Corp., 676 F. Supp. 2d 895, 906 (C.D. Cal. 2009) ("[T]he mere

existence of TILA violations and lack of disclosure does not itself equitably toll the statute of limitations."); <u>Jacob v. Aurora Loan Servs.</u>, 2010 WL 2673128, at *3 (N.D. Cal. July 2, 2010) ("Plaintiff cannot rely on the same factual allegations to show that Defendants violated federal statutes and to toll the limitations periods that apply to those statutes. Otherwise, equitable tolling would apply in every case where a plaintiff alleges violations of TILA . . . and the statutes of limitations would be meaningless.")).

In the present case, the only factual allegations that Plaintiff presents in support of equitable tolling are the factual allegations that form the basis of her claims asserting violation of federal law. [Mem. in Opp. at 14.] Plaintiff has therefore failed to make a plausible claim that equitable tolling saves her otherwise time-barred HOEPA and TILA damages claims. It is, however, arguably possible for her to cure the defects in her claims by amendment. Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to the portion of Count I asserting a HOEPA damages claim and the portion of Count III asserting a TILA damages claims. Those claims are DISMISSED WITHOUT PREJUDICE.

### B. <u>Count II (RESPA)</u>

Plaintiff alleges that Defendants violated 12 U.S.C. § 2607 by accepting charges for real estate services that were

actually charges for other services rendered.  [Complaint at ¶¶ 77-80.]

    "The statute of limitations for a RESPA claim is either one or three years from the date of the violation, depending on the type of violation." Cannon v. US Bank, 2011 WL 1637415, at *7.  Alleged violations of § 2607 are subject to a one-year statute of limitations.  12 U.S.C. § 2614.  Plaintiff failed to bring her RESPA claim within the applicable limitations periods.  Although equitable tolling may apply to RESPA claims, Phillips, 2011 WL 240813, at *9 (citation omitted), Plaintiff has not alleged any facts specific to the RESPA claim that would warrant equitable tolling.  It is, however, arguably possible for her to cure the defects in her claims by amendment.  Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count II, which is DISMISSED WITHOUT PREJUDICE.

    C.    **Count IV (FCRA)**

    In Count IV of the Complaint, Plaintiff alleges that she is entitled to maintain a private cause of action pursuant to "section 1681 (s)(2)(b)[.]"  [Complaint at ¶ 88.]  Plaintiff seeks damages for willful and negligent non-compliance with the FCRA.  [Id. at ¶¶ 89-90.]  The Complaint alleges that Defendants illegally reported negative information about her to credit reporting agencies, including "an excessive amount of debt into which plaintiff was tricked and deceived into signing."  [Id. at

¶¶ 85-86.]  The Complaint also appears to suggest that Defendants reported that she was delinquent on her loan payments when in fact she made every payment.  [Id. at ¶ 87.]

Countrywide acknowledges that,

The FCRA imposes civil liability on any person who willfully or negligently fails to comply with any of the Act's requirements with respect to any consumer.  15 U.S.C. § 1681n (willful noncompliance), 15 U.S.C. § 1681o (negligent noncompliance).  As it relates to furnishers of information to consumer reporting agencies, the FCRA sets forth two general requirements: the duty to provide accurate information, 15 U.S.C. § 1681s-2(a), and the duty to investigate the accuracy of reported information upon receiving notice of a dispute, 15 U.S.C. § 1681s-2(b).

[Mem. in Supp. of Motion at 9-10.]  Plaintiff attempts to allege willful and negligent violation of both Countrywide's duty to report accurate information and its duty to investigate a dispute.

## 1.   <u>Section 1681s-2(a) Claim</u>

This district court has recognized that:

pursuant to 15 U.S.C. § 1681s-2(a), furnishers of credit information have a duty to provide accurate information to a credit reporting agency.  <u>See also</u> <u>Gorman v. Wolpoff & Abramson, LLP</u>, 584 F.3d 1147, 1154 (9th Cir. 2009).  These duties are enforceable only by federal and state agencies.  <u>See</u> <u>id</u>; <u>see also</u> <u>Nelson v. Chase Manhattan Mortg.</u> <u>Corp.</u>, 282 F.3d 1057, 1059-60 (9th Cir. 2002); 15 U.S.C. § 1681s-2(d) (noting that duties created under § 1681s-2(a) are enforced exclusively by the Federal agencies and officials and State officials).  An individual may bring a private cause of action only under 15 U.S.C. § 1681s-2(b), where the furnisher is given notice from a credit

reporting agency of a dispute and fails to
investigate within specified time limits.  <u>See
also</u> <u>Nelson</u>, 282 F.3d at 1060.  In other words,
"[i]t is only after (1) a consumer has notified a
credit reporting agency of an inaccuracy, (2) the
agency has notified the furnisher, and (3) the
furnisher has failed to take action, that a
consumer may sue the furnisher."  <u>See</u> <u>Diana I Am
v. Nat'l City Mortg. Co.</u>, 2010 WL 571936, at *10
(D. Haw. Feb. 17, 2010).

<u>Cootey v. Countrywide Home Loans, Inc.</u>, Civil No. 11-00152

JMS/KSC, 2011 WL 2441707, at *7 (D. Hawai`i June 14, 2011).

In the present case, Plaintiff's § 1681s-2(b) claim

fails to state a claim upon which relief can be granted because

she has not alleged that: she notified a credit reporting agency

about the allegedly inaccurate information that Defendants

furnished; the agency notified Defendants; and Defendants failed

to take action.  Plaintiff, however, can arguably cure the defect

in this claim by amendment.  Countrywide's Motion is therefore

GRANTED IN PART AND DENIED IN PART, to the extent that the

portion of Count IV alleging a claim based on a § 1681s-2(b)

violation is DISMISSED WITHOUT PREJUDICE.

**2.  <u>Section 1681s-2(a) Claim</u>**

To the extent that Count IV alleges a claim based on

Countrywide's violation of its duty pursuant to § 1681s-2(a), it

fails to state a claim upon which relief can be granted because

those duties are only enforceable by state and federal agencies.

<u>Id.</u>  Further, it is not possible for Plaintiff to cure the

defects in her § 1681s-2(a) claim through amendment.  The Court

33

therefore GRANTS Countrywide's Motion, to the extent that the portion of Count IV alleging a § 1681s-2(a) claim is DISMISSED WITH PREJUDICE.

   **D.   Count VIII (RICO)**

   Count VIII alleges a civil RICO conspiracy claim. [Complaint at ¶¶ 110-15.]  Plaintiff states:

> Defendants['] actions and use of multiple corporate entities, multiple parties, and concerted and predetermined acts and conduct specifically designed to defraud Plaintiff constitutes an "enterprise", with the aim and objective of the enterprise being to perpetrate a fraud upon the Plaintiff through the use of intentional nondisclosure, material misrepresentation, and creation of fraudulent loan documents.

[Id. at ¶ 113.]

> To state a civil claim for a RICO violation under 18 U.S.C. § 1962(c), a plaintiff must show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Sedima, S.P.R.L. v. Imrex Co., Inc., 473 U.S. 479, 496, 105 S. Ct. 3275, 87 L. Ed. 2d 346 (1985).  To have standing under civil RICO, [a plaintiff] is required to show that the racketeering activity was both a but-for cause and a proximate cause of his injury. See Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268, 112 S. Ct. 1311, 117 L. Ed. 2d 532 (1992).  Proximate causation for RICO purposes requires "some direct relation between the injury asserted and the injurious conduct alleged." Id.

Rezner v. Bayerische Hypo-Und Vereinsbank AG, 630 F.3d 866, 873 (9th Cir. 2010) (footnote omitted).

   Section 1962(c) states:

   It shall be unlawful for any person employed by or

associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

This district court has stated:

An "'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). While the RICO statute does not define an enterprise beyond that, the Supreme Court has found that "'an enterprise includes any union or group of individuals associated in fact' and that RICO reaches 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle v. U.S., 129 U.S. 2237, 2243 (2009) (quoting U.S. v. Turkette, 452 U.S. 576, 583 (1981)). The Supreme Court elaborated that such an enterprise is "proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." Id. Additionally, an association-in-fact enterprise must feature, "a purpose, relationships among those associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Id. at 2244.

Herschelman v. New Century Mortg. Corp., Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *7 (D. Hawai`i Oct. 29, 2010).

In light of these precedents, this Court agrees with Countrywide that Plaintiff has failed to allege the elements of a civil RICO violation, including predicate racketeering activity, pattern or continuity, and a direct injury that was proximately caused by the predicate racketeering activity. Plaintiff has therefore failed to allege a plausible civil RICO claim. It is,

however, arguably possible for Plaintiff to cure the defects in this claim by amendment. Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VIII, which is DISMISSED WITHOUT PREJUDICE.

## E. Count XVI (GLBA)

"The Gramm-Leach-Bliley Act . . . was adopted in 1999 to eliminate barriers to affiliation among banks and other depository institutions, securities firms, and insurance companies." Am. Bankers Ass'n v. Gould, 412 F.3d 1081, 1087 (9th Cir. 2005) (citing Gramm-Leach-Bliley Act, Pub. L. No. 106-102, 113 Stat. 1338 (1999) (codified as amended in scattered sections of 12, 15, 16 and 18 U.S.C.)).

The Complaint alleges that Defendants failed to provide the required consumer privacy notices that explain what information is collected about the consumer, where and how the information is shared, and how the consumer can opt out and elect not to have his information shared with unaffiliated parties. [Complaint at ¶ 157 (citing 15 USC section 6801 et seq.).]

Section 6801(b) states, in pertinent part:

each agency or authority described in section 6805(a) of this title shall establish appropriate standards for the financial institutions subject to their jurisdiction relating to administrative, technical, and physical safeguards--
(1) to insure the security and confidentiality of customer records and information;
(2) to protect against any anticipated threats or hazards to the security or

> integrity of such records; and
> (3) to protect against unauthorized access to
> or use of such records or information which
> could result in substantial harm or
> inconvenience to any customer.

The notice and opt out requirements, and the exceptions thereto, are set forth in 15 U.S.C. § 6802. Enforcement is governed by 15 U.S.C. § 6805. Section 6805(a) states, in pertinent part, "[t]his subchapter and the regulations prescribed thereunder shall be enforced by the Federal functional regulators, the State insurance authorities, and the Federal Trade Commission with respect to financial institutions and other persons subject to their jurisdiction under applicable law[.]" Thus, "[t]he Gramm-Leach-Bliley Act, 15 U.S.C. §§ 6801, et seq., does not provide for a private right of action." Cannon v. Zurich N. Am., No. CV-07-0927-PHX-FJM, 2007 WL 2875500, at *1 (D. Ariz. Oct. 3, 2007) (citing 15 U.S.C. § 6805(a); Rowland v. Prudential Fin., Inc., No. CV-04-2287, 2007 WL 1893630, at *6 (D. Ariz. July 2, 2007)).

Insofar as there is no private right of action under the GLBA, Count XVI fails to state a claim upon which relief can be granted. Further, it is not possible for Plaintiff to cure the defects in this claim through amendment. The Court therefore GRANTS Countrywide's Motion, to the extent that Count XVI is DISMISSED WITH PREJUDICE.

**F.  <u>Count XVIII (ECOA)</u>**

Count XVIII alleges that Defendants "did not provide Plaintiff with signed and dated copies of the loan application and the appraisal report used to qualify Plaintiff for the subject loan."  [Complaint at ¶ 168.]  Further, this allegedly allowed Defendants to "conceal material misrepresentations" in those documents.  [Id. at ¶ 169.]

In Cootey, this district court addressed a similar ECOA claim as follows:

> Under ECOA, "[e]ach creditor shall promptly furnish an applicant, upon written request by the applicant made within a reasonable period of time of the application, a copy of the appraisal report used in connection with the applicant's application for a loan that is or would have been secured by a lien on residential real property." 15 U.S.C. § 1691(e).  A claim for violation of ECOA must be brought no later than two years "from the date of occurrence of the violation," 15 U.S.C. § 1691e(f), but equitable tolling may apply under certain circumstances.  See Hafiz v. Greenpoint Mortg. Funding, Inc., 652 F. Supp. 2d 1039, 1045 (N.D. Cal. 2009).
> The Complaint fails to assert a necessary prerequisite to Plaintiffs' ECOA claim—that Plaintiffs made a written request for the appraisal report within a reasonable time of his application.  Further, even if Plaintiffs did include such an allegation, Plaintiffs applied for this loan in December 2007 and the Complaint includes no allegations indicating that equitable tolling applies.  The court therefore DISMISSES Plaintiffs' ECOA claim with leave to amend.

2011 WL 2441707, at *6-7.  Similarly, in the instant case, Plaintiff has failed to allege that she requested the appraisal in a timely manner and, even if she did so, Plaintiff failed to

file suit within two years of the alleged violation. The Complaint does not contain any allegations that would support equitable tolling of her ECOA claim as to the appraisal. Plaintiff, however, can arguably cure the defects in this claim by amendment. Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to the portion of Count XVIII based on the failure to provide a copy of the appraisal, which is DISMISSED WITHOUT PREJUDICE.

In contrast, Plaintiff has not identified, nor has this Court found, a provision similar to § 1691(e) requiring lenders to furnish a copy of a loan application to an applicant upon request. Plaintiff's claim that Countrywide violated to the ECOA by failing to provide her with a copy of her loan application fails to state a claim upon which relief can be granted, and Plaintiff cannot cure the defect in this claim by amendment. Countrywide's Motion is therefore GRANTED as to the portion of Count XVIII based on the failure to provide a copy of the loan application, which is DISMISSED WITH PREJUDICE.

**G.** **Count XIX (CROA)**

Count XIX alleges that Plaintiff and Countrywide entered into a "consumer credit transaction", as defined in the CROA, 15 U.S.C. § 1679a(2). [Complaint at ¶ 173.] The Complaint alleges that Defendants' false or misleading statements during the loan origination process regarding Plaintiff's credit

violated 15 U.S.C. § 1679b(a)(1), and therefore Plaintiff may recover damages and attorneys' fees and costs pursuant to 15 U.S.C. § 1679g(a).  [Id. at ¶¶ 174-75.]

In another recent case, this district court addressed the CROA claim as follows:

> pursuant to 15 U.S.C. § 1679a(3), CROA applies to credit-repair organizations.  Defendants [Bank of America, formerly known as Countrywide Home Loans, Inc., and BAC Home Loan Servicing, LP] are not credit-repair organizations under the CROA definition, and Plaintiff does not allege anywhere in the Complaint that his interactions with Defendants involve credit-repair.  As such, Plaintiff's CROA claim fails to state a claim upon which relief may be granted.

Dodds v. BAC Home Loans Servicing, LP, CV. No. 10-00371 DAE KSC, 2011 WL 1483971, at *1 n.2 (D. Hawai`i Apr. 19, 2011).

Similarly, Plaintiff's CROA claim in the instant case fails because Countrywide is not a credit-repair organization. It is not possible for Plaintiff to cure the defects in this claim by amendment.  Countrywide's Motion is therefore GRANTED as to Count XIX, which is DISMISSED WITH PREJUDICE.

## II.  **Fraud-based Claims**

Countrywide argues generally that Plaintiff's fraud-based claims fail because the Complaint does not satisfy the heightened pleading requirements for fraud claims under Fed. R. Civ. P. 9 and the applicable case law.

### A.  **Count V (Fraudulent Misrepresentation)**

Plaintiff alleges that Defendants intentionally

concealed material information and made false representations prior to, and at the time of, closing. Plaintiff lists various omissions and misrepresentations, such as misrepresenting or concealing the terms of the loan and the declining property values, but Plaintiff does not identify each defendant who allegedly made each omission or misrepresentation. [Complaint at ¶¶ 94.1-94.9.]

Plaintiff's Complaint does not allege her fraudulent misrepresentation claim with the specificity required by Fed. R. Civ. P. 9(b) and the applicable case law. See, e.g., Shroyer v. New Cingular Wireless Servs., Inc., 622 F.3d 1035, 1042 (9th Cir. 2010) (stating that plaintiffs "must allege the time, place, and content of the fraudulent representation; conclusory allegations do not suffice" (citation omitted)); Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir. 2007) ("In the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, identif[y] the role of [each] defendant[] in the alleged fraudulent scheme." (alterations in original) (citation omitted)). It is arguably possible for Plaintiff to cure the defects in this claim by amendment.

The Motion is therefore GRANTED IN PART AND DENIED IN PART, insofar as Count V is DISMISSED WITHOUT PREJUDICE.

**B.   Count XII (UDAP)**

Plaintiff alleges that she is a consumer as defined in

Haw. Rev. Stat. § 480-1 and that Defendants engaged in various acts or practices that violated Haw. Rev. Stat. §§ 480-2(a) and/or 481A-3. Plaintiff's allegations focus primarily on her claim that Defendants falsified her loan application and misrepresented the amount she would have to pay in order to induce her to accept a loan that Defendants knew she could not afford. [Complaint at ¶¶ 130, 134-134.9.] Further, Plaintiff alleges that Defendants' TILA violations also constitute UDAP violations. [Id. at ¶ 135.]

First, the Court notes that, while TILA does not preempt § 480-2 claims in general, TILA does preempt UDAP claims that are based on alleged TILA violations. Kajitani v. Downey Sav. & Loan Ass'n, F.A., 647 F. Supp. 2d 1208, 1220 (D. Hawai`i 2008). The Court has previously noted that HOEPA is an amendment to TILA. Herschelman v. New Century Mortg. Corp., Cv. No. 09-00461 DAE-KSC, 2010 WL 4448224, at *4 n.3 (D. Hawai`i Oct. 29, 2010) (citation omitted). Thus, the portion of Plaintiff's UDAP claim based on alleged TILA and HOEPA violations fails to state a plausible UDAP claim, and Plaintiff cannot cure this defect through amendment. This portion of Count XII must be DISMISSED WITH PREJUDICE. The Court now turns to the remaining portion of Plaintiff's UDAP claim.

Section 480-2(a) states: "Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any

trade or commerce are unlawful."  Section 481A-3(a) sets forth

various forms of deceptive trade practices.  This district court,

however, has recognized that

> "lenders generally owe no duty to a borrower 'not
> to place borrowers in a loan even where there was
> a foreseeable risk borrowers would be unable to
> repay.'" McCarty v. GCP Mgmt., LLC, 2010 WL
> 4812763, at *6 (D. Haw. Nov. 17, 2010) (quoting
> Champlaie v. BAC Home Loans Servicing, LP, 706 F.
> Supp. 2d 1029, 1061 (E.D. Cal. 2009)).  See also
> Sheets v. DHI Mortg. Co., 2009 WL 2171085, at *4
> (E.D. Cal. July 20, 2009) (reasoning that no duty
> exists "for a lender 'to determine the borrower's
> ability to repay the loan. . . .  The lender's
> efforts to determine the creditworthiness and
> ability to repay by a borrower are for the
> lender's protection, not the borrower's.'"
> (quoting Renteria v. United States, 452 F. Supp.
> 2d 910, 922-23 (D. Ariz. 2006)).
> "[A]s a general rule, a financial institution
> owes no duty of care to a borrower when the
> institution's involvement in the loan transaction
> does not exceed the scope of its conventional role
> as a mere lender of money."  Nymark v. Heart Fed.
> Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 56 (Cal. Ct.
> App. 1991).  Nothing in the Complaint indicates
> that any Defendant "exceed[ed] the scope of [a]
> conventional role as a mere lender of money."  The
> claims fail on that basis alone.  The court,
> however, cannot conclude at this time that further
> amendment is futile and allows the Casinos an
> opportunity to amend Count VII to attempt to state
> a section 480-2 claim.

Casino v. Bank of Am., Civil No. 10-00728 SOM/BMK, 2011 WL

1704100, at *12-13 (D. Hawai`i May 4, 2011) (alterations in

original).

For the same reasons, this Court CONCLUDES that

Plaintiff has not alleged a plausible UDAP claim against

Countrywide.  It would, however, arguably be possible for

Plaintiff to cure the defects in this claim by amendment, provided that, to the extent Plaintiff's UDAP claim is premised upon alleged fraud, Plaintiff satisfies the pleading requirements of Fed. R. Civ. P. 9(b). Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XII. The portion of Count XII based on alleged TILA and HOEPA violations is DISMISSED WITH PREJUDICE, and the remainder of Count XII is DISMISSED WITHOUT PREJUDICE.

### C. **Count XVII (Right to Privacy)**

The Complaint notes that the Hawai`i Constitution provides that every person has a right of privacy, and Plaintiff alleges that Defendants violated her right of privacy in her confidential personal financial information by disclosing it to non-affiliated third parties without following the required procedures to protect her privacy. [Complaint at ¶¶ 162-64.] Plaintiff alleges that Defendants' actions were part of "an egregious and ongoing and far-reaching fraudulent scheme". [Id. at ¶ 163.]

This district court, however, has recognized that there is "no independent state law claim for a violation of privacy in bank records under the Hawaii State Constitution." Flowers v. First Hawaiian Bank, 289 F. Supp. 2d 1213, 1221 (D. Hawai`i 2003) (citing State v. Klattenhoff, 71 Haw. 598, 801 P.2d 548, 552 (1990) ("we adopt the rule set forth in United States v. Miller,

44

[425 U.S. 435, 440-43 (1976),] and follow the majority of states in finding no reasonable expectation of privacy in personal bank records")). Count XVII therefore fails to state a claim upon which relief can be granted, and it is not possible for Plaintiff to cure the defects in this claim by amendment. Countrywide's Motion is GRANTED as to Count XVII, which is DISMISSED WITH PREJUDICE.

### D.  **Count VII (Civil Conspiracy)**

Count VII alleges, *inter alia*:

> In connection with the application for and consummation of the mortgage loan which is the subject of this action, Defendants agreed, between and among themselves to engage in actions and a course of conduct designed to further an illegal act or accomplish a legal act by unlawful means, and to commit one or more overt acts in furtherance of the conspiracy to defraud the Plaintiff.

[Complaint at ¶ 105.]

Hawai`i does not recognize an independent cause of action for "civil conspiracy". Such a theory of potential liability is derivative of other wrongs. See, e.g., Chung v. McCabe Hamilton & Renny Co., 109 Hawai`i 520, 530, 128 P.3d 833, 843 (2006); Weinberg v. Mauch, 78 Hawai`i 40, 49, 890 P.2d 277, 286 (1995). Further, the alleged conspiracy is premised on the alleged fraud in this case. Plaintiff must therefore meet the heightened pleading requirements of Rule 9(b) in alleging a conspiracy. See Swartz v. KPMG LLP, 476 F.3d 756, 765 (9th Cir.

2007) ("Rule 9(b) imposes heightened pleading requirements where the object of the conspiracy is fraudulent." (citation and internal quotation marks omitted)).

Insofar as this Court has dismissed all of Plaintiff's fraud-based claims, and the conspiracy claim also fails to meet the heightened pleading requirements for fraud claims, Plaintiff fails to state a plausible claim in Count VII. It is, however, arguably possible for Plaintiff to cure the defects in this claim by amendment. Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count VII, which is DISMISSED WITHOUT PREJUDICE.

## III. **Other State Law Claims**

The Court now turns to the remainder of Plaintiff's state law claims.

### A. **Count VI (Breach of Fiduciary Duty)**

This district court has recognized that:

Lenders generally owe no fiduciary duties to their borrowers. See, e.g., Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53, 54 n.1 (Cal. App. 1991) ("The relationship between a lending institution and its borrower-client is not fiduciary in nature."); Miller v. U.S. Bank of Wash., 865 P.2d 536, 543 (Wash. App. 1994) ("The general rule . . . is that a lender is not a fiduciary of its borrower."); Huntington Mortg. Co. v. DeBrota, 703 N.E.2d 160, 167 (Ind. App. 1998) ("A lender does not owe a fiduciary duty to a borrower absent some special circumstances."); Spencer v. DHI Mortg. Co., 642 F. Supp. 2d 1153, 1161 (E.D. Cal. 2009) ("Absent 'special circumstances' a loan transaction 'is at arms-length and there is no fiduciary relationship

between the borrower and lender.'") (quoting <u>Oaks
Mgmt. Corp. v. Super. Ct.</u>, 51 Cal. Rptr. 3d 561
(Cal. App. 2006)); <u>Ellipso, Inc. v. Mann</u>, 541 F.
Supp. 2d 365, 373 (D.D.C. 2008) ("[T]he
relationship between a debtor and a creditor is
ordinarily a contractual relationship . . . and is
not fiduciary in nature.") (citation omitted).

<u>McCarty v. GCP Mgmt., LLC</u>, Civil No. 10-00133 JMS/KSC, 2010 WL

4812763, at *5 (D. Hawai`i Nov. 17, 2010).  The district court in

<u>McCarty</u> recognized that such a special relationship "might arise

where there is inequality of bargaining power."  <u>Id.</u> (citing

<u>Miller</u>, 865 P.2d at 543 ("A quasi-fiduciary relationship may

exist where the lender has superior knowledge and information,

the borrower lacks such knowledge or business experience, the

borrower relies on the lender' advice, and the lender knew the

borrower was relying on the advice.")).

    Thus, Plaintiff can only state a claim against

Countrywide if she can plead facts regarding an inequality of

bargaining power that would constitute special circumstances

beyond the traditional borrower-lender relationship.  Although

Plaintiff attempted to do so in Count VI, the Court finds that

the allegations of the Complaint are not sufficient to plead a

fiduciary relationship between Plaintiff and Countrywide.  Count

VI therefore fails to allege a plausible claim for breach of

fiduciary relationship.  It is, however, arguably possible for

Plaintiff to cure the defects in this claim by amendment.

Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN

PART as to Count VI, which is DISMISSED WITHOUT PREJUDICE.

**B.  Count IX (Quiet Title)**

Count IX asserts that Plaintiff is still the rightful title owner of the Property, and Count IX seeks an order requiring Defendants to transfer or release any interest or encumbrance that they have on the Property to Plaintiff. [Complaint at ¶¶ 116-22.5]  This district court has construed similar allegations as attempts to assert a claim pursuant to Haw. Rev. Stat. § 669-1(a).  See, e.g., Phillips v. Bank of Am., Civil No. 10-00551 JMS-KSC, 2011 WL 240813, at *13 (D. Hawai`i Jan. 21, 2011).  Section 669-1(a) states: "Action may be brought by any person against another person who claims, or who may claim adversely to the plaintiff, an estate or interest in real property, for the purpose of determining the adverse claim."

In order for a mortgagor to quiet title against the mortgagee, the mortgagor must establish that he is the rightful owners of the property and he has paid, or is able to pay, the outstanding debt on his property.  Phillips, 2011 WL 240813, at *13.  Plaintiff, however, has not done so in the instant case. It is arguably possible for Plaintiff to cure the defect in this claim by amendment.  Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count IX, which is DISMISSED WITHOUT PREJUDICE.

### C. **Count X (Mistake)**

Count X alleges that, if Defendants' conduct does not rise to the level of fraud, "then the transaction was entered into based upon mutual mistake . . . ." [Complaint at ¶ 124.]

The Hawai`i Supreme Court has adopted § 152 of the Restatement (Second) of Contracts as the proper test to determine whether rescission of a contract is warranted based on mutual mistake. Thompson v. AIG Hawaii Ins. Co., Inc., 111 Hawai`i 413, 424, 142 P.3d 277, 288 (2006) (citing AIG Hawai`i Ins. Co. v. Bateman, 82 Hawai`i 453, 457–58, 923 P.2d 395, 399-400 (1996)). Restatement (Second) of Contracts § 152 states:

> (1) Where a mistake of both parties at the time a contract was made as to a basic assumption on which the contract was made has a material effect on the agreed exchange of performances, the contract is voidable by the adversely affected party unless he bears the risk of the mistake under the rule stated in § 154.
>
> (2) In determining whether the mistake has a material effect on the agreed exchange of performances, account is taken of any relief by way of reformation, restitution, or otherwise.

Plaintiff has not sufficiently plead a claim for rescission based on mutual mistake pursuant to § 152. It would, however, arguably be possible for Plaintiff to cure the defects in this claim by amendment. Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count X, which is DISMISSED WITHOUT PREJUDICE.

### D.  **Count XI - Unconscionability**

Count XI alleges that the terms and conditions of the promissory note and mortgage were unconscionable because Plaintiff "placed her trust and confidence in Defendants to make proper and timely disclosures, and properly qualify her for the loan, among other things." [Complaint at ¶ 126.]  In addition, Plaintiff alleges that she did not understand the terms of loan and that Defendants, who had superior bargaining power over Plaintiff, did not inform her of the true terms of the loan. [Id. at ¶ 127.]

Unconscionability is generally a defense in a contract action, not an affirmative claim for relief.  Phillips, 2011 WL 240813, at *12 (citations omitted).  "To the extent unconscionability can be addressed affirmatively as part of a different-that is, independent-cause of action, such a claim is asserted to prevent the enforcement of a contract whose *terms* are unconscionable."  Id. (emphasis in original) (citation and internal quotation marks omitted).  Dismissal of an unconscionability "claim" is proper where the claim only challenges the defendant's general conduct and does not identify any specific contractual term as unconscionable.  Id.

In the present case, Plaintiff has not alleged that any specific term of her promissory note or mortgage was unconscionable, and she has therefore failed to allege a

plausible claim for unconscionability.  It would, however,

arguably be possible for Plaintiff to cure the defects in this

claim by amendment.  Countrywide's Motion is therefore GRANTED IN

PART AND DENIED IN PART as to Count XI, which is DISMISSED

WITHOUT PREJUDICE.

### E.   **Count XIII (Failure to Act in Good Faith)**

Count XIII alleges that Defendants owed her a duty to

deal with her fairly and in good faith.  [Complaint at ¶ 145.]

Plaintiff alleges that they violated that duty

> by making various misrepresentations of material
> fact and/or omissions of material fact, not making
> the mandatory federal law disclosures, failing to
> disclose that Plaintiff was not financially
> qualified for the loan, and/or the likelihood of
> the value of the Property falling, that Plaintiff
> was likely to default, and would not qualify for
> refinancing.

[Id. at ¶ 146.]

This district court has characterized similar claims as

attempts to allege claims for the tort of bad faith.  See, e.g.,

Phillips, 2011 WL 240813, at *5 (citing Best Place v. Penn Am.

Ins. Co., 82 Haw. 120, 128, 920 P.2d 334, 342 (1996) (adopting

tort of bad faith for breach of implied covenant of good faith

and fair dealing in an insurance contract)).

> "In Best Place, the Hawaii Supreme Court
> noted that although Hawaii law imposes a duty of
> good faith and fair dealing in all contracts,
> whether a breach of this duty will give rise to a
> bad faith tort cause of action depends on the
> duties inherent in a particular type of contract."
> Jou v. Nat'l Interstate Ins. Co. of Haw., 114 Haw.

122, 129, 157 P.3d 561, 568 (Haw. App. 2007)
(citing Best Place, 82 Haw. at 129, 920 P.2d at
334). "The court concluded that special
characteristics distinguished insurance contracts
from other contracts and justified the recognition
of a bad faith tort cause of action for the
insured in the context of first- and third-party
insurance contracts." Id. (citing Best Place, 82
Haw. at 131-32, 920 P.2d at 345-46). Indeed, "the
Hawaii Supreme Court emphasized that the tort of
bad faith, as adopted in Best Place, requires a
contractual relationship between an insurer and an
insured." Id. (citing Simmons v. Puu, 105 Haw.
112, 120, 94 P.3d 667, 675 (2004)).

Moreover, although commercial contracts for
"sale of goods" also contain an obligation of good
faith in their performance and enforcement, this
obligation does not create an independent cause of
action. See Stoebner Motors, Inc. v. Automobili
Lamborghini S.P.A., 459 F. Supp. 2d 1028, 1037-38
(D. Haw. 2006). And Hawaii courts have noted that
"[o]ther jurisdictions recognizing the tort of bad
faith . . . limit such claims to the insurance
context or situations involving special
relationships characterized by elements of
fiduciary responsibility, public interest, and
adhesion." Id. at 1037 (quoting Francis v. Lee
Enters., 89 Haw. 234, 238, 971 P.2d 707, 711
(1999)). It is thus unlikely that Plaintiffs
could recover for bad faith as alleged in Count
III.

Importantly, even assuming a bad faith tort
exists outside the insurance context, it is
well-settled that "[a] party cannot breach the
covenant of good faith and fair dealing before a
contract is formed." Contreras v. Master Fin.,
Inc., 2011 WL 32513, at *3 (D. Nev. Jan. 4, 2011)
(citing Indep. Order of Foresters v. Donald,
Lufkin & Jenrette, Inc., 157 F.3d 933, 941 (2d
Cir. 1998) ("[A]n implied covenant relates only to
the performance under an extant contract, and not
to any pre-contract conduct.")). Hawaii follows
this distinction. See Young v. Allstate Ins. Co.,
119 Haw. 403, 427, 198 P.3d 666, 690 (2008)
(indicating the covenant of good faith does not
extend to activities occurring before consummation
of an insurance contract).

Thus, because all of Count III's allegations

concern pre-contract activities (failing to
disclosure terms, failing to conduct proper
underwriting, making an improper loan to
Plaintiffs), Defendants cannot be liable for bad
faith.  See id.; see also Larson v. Homecomings
Fin., LLC, 680 F. Supp. 2d 1230, 1237 (D. Nev.
2009) ("Because Plaintiffs' claim revolves
entirely around alleged misrepresentations made
before the [mortgage loan] contract was entered
into, [the bad faith claim] fails as a matter of
law.").

And, even if Plaintiffs are attempting to
assert bad faith in the performance of a
contractual right to foreclose, "a court should
not conclude that a foreclosure conducted in
accordance with the terms of a deed of trust
constitutes a breach of the implied covenant of
good faith and fair dealing." Davenport v. Litton
Loan Servicing, LP, 725 F. Supp. 2d 862, 884 (N.D.
Cal. 2010) (citation omitted).  "The covenant [of
good faith] does not 'impose any affirmative duty
of moderation in the enforcement of legal
rights.'"  Id. (quoting Price v. Wells Fargo Bank,
213 Cal. App. 3d 465, 479-80, 261 Cal. Rptr. 735,
742 (1989)).

Id. at *5-6 (alterations in original).

All of the alleged failures to act in good faith deal
with pre-loan consummation activities.  [Complaint at ¶ 146.]
Plaintiff has therefore failed to allege a plausible claim based
on the tort of bad faith.  It is, however, arguably possible for
Plaintiff to cure the defects in this claim by amendment.
Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN
PART as to Count XIII, which is DISMISSED WITHOUT PREJUDICE.

**F.**   **Count XIV - Recoupment**

Count XIV simply states that Plaintiff is entitled to
"equitable recoupment" because of the wrongful acts and/or

omissions by Defendants.  [Complaint at ¶ 150.]  To the extent

that Count XIV is based on TILA, recoupment is only available

under TILA as a "defense" in "an action to collect a debt", 15

U.S.C. § 1640(e), and a non-judicial foreclosure is not "an

action to collect a debt".  Rey v. Countrywide Home Loans, Inc.,

Civil No. 11-00142 JMS/KSC, 2011 WL 2160679, at *13 (D. Hawai`i

June 1, 2011).  To the extent that Count XIV is based on

equitable recoupment, that is a defense, not an affirmative claim

for relief.  Id. (citing City of Saint Paul, Alaska v. Evans, 344

F.3d 1029, 1034 (9th Cir. 2003) ("[E]quitable recoupment has been

allowed by state courts as well, but it has always been

recognized as a defense, not a claim.")).  Thus, no amendment can

cure the defect in Plaintiff's recoupment "claim".  Countrywide's

Motion is therefore GRANTED as to Count XIV, which is DISMISSED

WITH PREJUDICE.

     **G.**   **Count XV (IIED/NIED)**

Count XV alleges that Defendants' actions, including,

*inter alia*, misleading Plaintiff, providing Plaintiff a loan she

could not afford, and depriving Plaintiff of the enjoyment of her

Property, constituted IIED and/or NIED.  [Complaint at ¶¶ 151-

55.]

At the outset, the Court must address Countrywide's

argument that Plaintiff's IIED and NIED claims are barred by the

statute of limitations in Haw. Rev. Stat. § 657-7, which states,

in pertinent part, that: "Actions for the recovery of compensation for damage or injury to persons or property shall be instituted within two years after the cause of action accrued, and not after . . . ."

Plaintiff's IIED and NIED claims are based primarily upon events that occurred during loan origination.  Plaintiff filed this action on July 16, 2010.  Although Plaintiff entered into the loan in July 2007, more than two years prior to the filing of the Complaint, the "discovery rule" applies to the statute of limitations for IIED and NIED claims.  <u>United States EEOC v. NCL Am.</u>, 535 F. Supp. 2d 1149, 1169-70 (D. Hawai`i 2008).  In that case, the district court stated:

> [U]nder the discovery rule, a cause of action accrues when the plaintiff knew or should have known of the causal connection between the defendant's action and the damage done.  While it is clear that [the defendant's] action in terminating the policy was known by [the p]laintffs (sic) in 1992, it is still unclear when [the p]laintiffs actually suffered emotional distress, and when they connected their distress with [the defendant's] actions.

<u>Id.</u> at 1170 (alterations in original) (citation omitted).  Similarly, in the present case, it is unclear when Plaintiff suffered her emotional distress and when she connected it with Countrywide's actions.  Thus, at this time, the Court cannot find that Plaintiff's IIED and NIED claims are time-barred.

Countrywide also argues that Plaintiff's emotional distress claims fail because Plaintiff did not allege that either

the loan agreement specifically provided for emotional distress damages or clearly indicated that the parties expected such damages. [Mem. in Supp. of Motion at 17 (citing Francis v. Lee Enter., Inc., 971 P.2d 707, 713 (Haw. 1999)).] The Complaint, however, alleges that "Defendants owed Plaintiff a duty to avoid negligently and/or intentionally inflicting severe mental and emotional distress upon Plaintiff." [Complaint at ¶ 152.] Under the circumstances of this case, the Court construes this allegation as sufficient to survive a motion to dismiss on this issue, particularly because Countrywide failed to provide the loan agreement or any other supporting documentation showing that the parties did not provide for or expect emotional distress damages. The Court now turns to whether Plaintiff has asserted plausible IIED and NIED claims.

## 1. **IIED**

Under Hawai`i law, there are four elements of an IIED claim. First, the plaintiff must prove that the conduct was either intentional or reckless. Second, the conduct in question must have been "outrageous." Next, the plaintiff must establish causation, and finally, there must be evidence that the plaintiff suffered extreme emotional distress. See Young v. Allstate Ins. Co., 119 Hawai`i 403, 425, 198 P.3d 666, 688 (2008). A determination of "outrageous" conduct is fact specific. Hawai`i courts have defined outrageous conduct as conduct "'without just

56

cause or excuse and beyond all bounds of decency.'" Chin v.
Carpenter-Asui, No. 28654, 2010 WL 2543613, at *4 (Hawai`i Ct.
App. June 24, 2010) (quoting Lee v. Aiu, 85 Hawai`i 19, 34 n.12,
936 P.2d 655, 670 n.12 (1997) (some citations omitted)).  If the
alleged conduct does not rise to the level of "outrageous,"
dismissal is proper.  See Farmer ex rel. Keomalu v. Hickam Fed.
Credit Union, No. 27868, 2010 WL 466007, at *14 (Hawai`i Ct. App.
Feb. 2, 2010) (citing Shoppe v. Gucci America Inc., 94 Hawai`i
368, 387, 14 P.3d 1049, 1068 (2000)), cert. denied, 2010 WL
2625261 (Hawai`i June 29, 2010).

> "Default and foreclosure proceedings generally do
> not rise to the level of extreme and outrageous
> conduct.  Denying a loan modification which might
> result in foreclosure is no more 'outrageous in
> character' than actually foreclosing." Erickson
> v. Long Beach Mortg. Co., No. 10-1423 MJP, 2011 WL
> 830727, at *7 (W.D. Wash. Mar. 2, 2011) (citation
> omitted) (dismissing IIED claim on summary
> judgment).  But cf. Bass v. Ameriquest Mortg. Co.,
> Civ. No. 09-00476 JMS-BMK, 2010 WL 3025167, at
> *10-11 (D. Haw. Aug. 3, 2010) (denying summary
> judgment as to an IIED claim where the plaintiff
> asserted that the defendant "forged her signature
> on the 2006 loans, refused to honor [her] right of
> cancellation of the loans when she discovered the
> forgeries, and commenced foreclosure proceedings
> against [her] when she failed to make her loan
> payments").

Uy v. Wells Fargo Bank, N.A., Civ. No. 10-00204 ACK-RLP, 2011 WL
1235590, at *14 (D. Hawai`i Mar. 28, 2011) (alterations in
original).

This Court CONCLUDES that Count XV fails to allege a
plausible claim for IIED because Plaintiff has not alleged any

57

actions or omissions by Countrywide that rise to the level of outrageous conduct necessary for an IIED claim.  It would, however, arguably be possible for Plaintiff to cure the defects in this claim by amendment.  Countrywide's Motion is therefore GRANTED IN PART AND DENIED IN PART as to Count XV, insofar as Plaintiff's IIED claim is DISMISSED WITHOUT PREJUDICE.

### 2. <u>NIED</u>

> The elements of a claim for negligent infliction of emotional distress ("NIED") are: (1) that the defendant engaged in negligent conduct; (2) that the plaintiff suffered serious emotional distress; and (3) that such negligent conduct of the defendant was a legal cause of the serious emotional distress.  <u>Tran v. State Farm Mut. Automobile Ins. Co.</u>, 999 F. Supp. 1369, 1375 (D. Haw. 1998).  A cognizable claim for NIED under Hawaii law also "requires physical injury to either a person or property," <u>see</u> <u>Calleon v. Miyagi</u>, 76 Haw. 310, 320, 876 F.2d 1278 (1994), or a mental illness, <u>see</u> Haw. Rev. Stat. § 663-8.9.

<u>Dowkin v. Honolulu Police Dep't</u>, Civ. No. 10-00087 SOM-LEK, 2010 WL 4961135, at *9 (D. Hawai`i Nov. 30, 2010).  Duty and breach of duty are essential elements of a negligence claim under Hawai`i law.  <u>See</u> <u>Cho v. Hawai`i</u>, 115 Hawai`i 373, 379 n.11, 168 P.3d 17, 23 n.11 (2007) ("It is well-established that, in order for a plaintiff to prevail on a negligence claim, the plaintiff is required to prove all four of the necessary elements of negligence: (1) duty; (2) breach of duty; (3) causation; and (4) damages.").

As a general rule, lenders do not owe their borrowers a

duty of care sounding in negligence.  McCarty v. GCP Mgmt., LLC,
Civil No. 10-00133 JMS/KSC, 2010 WL 4812763, at *6 (D. Haw.
Nov. 17, 2010) (some citations omitted) (citing Champlaie v. BAC
Home Loans Servicing, LP, 706 F. Supp. 2d 1029, 1061 (E.D. Cal.
2009); Nymark v. Heart Fed. Sav. & Loan Ass'n, 283 Cal. Rptr. 53,
56 (Cal. App. 1991)).  In the present case, Plaintiff only dealt
with Countrywide in a borrower and lender capacity.  Similar to
the special circumstances exception to the general rule that a
borrower-lender relationship does not give rise to a fiduciary
relationship, "a lender may owe to a borrower a duty of care
sounding in negligence when the lender's activities exceed those
of a conventional lender."  Champlaie, 706 F. Supp. 2d at 1060
(discussing Nymark).  This Court therefore FINDS that Plaintiff
has not alleged that Countrywide owed her a duty of care sounding
in negligence, but it is arguably possible to cure the defects in
this claim through amendment.  Countrywide's Motion is therefore
GRANTED IN PART AND DENIED IN PART as to Count XV, insofar as
Plaintiff's NIED claim is DISMISSED WITHOUT PREJUDICE.

IV.  **Motion for a More Definite Statement**

        The only claim which survives Countrywide's Motion is
Plaintiff's TILA rescission claim in Count III.  Countrywide
argues that, if any claims survives dismissal, the Court should
require Plaintiff to file a more definite statement.  Under the
standard set forth *supra*, this Court FINDS that a more definite

statement is not necessary for Countrywide to respond to Plaintiff's TILA rescission claim. Countrywide's Motion is therefore DENIED to the extent that it seeks a more definite statement of any remaining claims.

## V.   **Leave to Amend**

This Court has granted dismissal of the following claims without prejudice:  Count I (HOEPA); Count II (RESPA); the portion of Count III asserting a TILA damages claims; the portion of Count IV (FCRA) alleging a violation of 15 U.S.C. § 1681s-2(b); Count V (fraudulent misrepresentation); Count VI (breach of fiduciary duty); Count VII (civil conspiracy); Count VIII (civil RICO claim); Count IX (quiet title); Count X (mistake); Count XI (unconscionability); Count XII (UDAP), except to the extent that the claim is based on alleged TILA and HOEPA violations; Count XIII (failure to act in good faith); Count XV (IIED & NIED); and the portion of Count XVIII (ECOA) based on the failure to provide a copy of the appraisal.

Plaintiff is given leave to submit a motion to the magistrate judge that seeks permission to file a First Amended Complaint to assert these claims, if Plaintiff can cure the defects identified in this order.  Plaintiff may also reassert the TILA rescission claim, which this Court did not dismiss. Plaintiff may not reassert the claims that this Court has dismissed with prejudice: the portion of Count IV alleging a

violation of 15 U.S.C. § 1681s-2(a); the portion of Count XII (UDAP) based on alleged TILA and HOEPA violations; Count XIV (recoupment); Count XVI (GLBA); Count XVII; the portion of Count XVIII (ECOA) based on the failure to provide a copy of the loan application; and Count XIX (CROA). The proposed First Amended Complaint must be attached to the motion. Plaintiff shall file the motion seeking leave to file the First Amended Complaint by no later than **September 22, 2011**. If Plaintiff fails to timely file a motion seeking leave to file an attached First Amended Complaint, this Court will automatically dismiss all of Plaintiff's claims, with the exception of the TILA rescission claim, with prejudice. In that instance, the case will proceed on the TILA rescission claim alone. The Court CAUTIONS Plaintiff's counsel to ensure that any new pleading does not repeat the deficiencies already called to his attention.

## CONCLUSION

On the basis of the foregoing, Countrywide's Motion to Dismiss, or in the Alternative, for a More Definite Statement, filed March 28, 2011, is HEREBY GRANTED IN PART AND DENIED IN PART. The Motion is GRANTED insofar as the Court HEREBY DISMISSES the following claims WITH PREJUDICE: the portion of Count IV alleging a violation of 15 U.S.C. § 1681s-2(a); the portion of Count XII (UDAP) based on alleged TILA and HOEPA violations; Count XIV (recoupment); Count XVI (GLBA); Count XVII;

the portion of Count XVIII (ECOA) based on the failure to provide a copy of the loan application; and Count XIX (CROA).

The Motion is GRANTED IN PART AND DENIED IN PART insofar as the Court HEREBY DISMISSES the following claims WITHOUT PREJUDICE: Count I (HOEPA); Count II (RESPA); the portion of Count III asserting a TILA damages claims; the portion of Count IV (FCRA) alleging a violation of 15 U.S.C. § 1681s-2(b); Count V (fraudulent misrepresentation); Count VI (breach of fiduciary duty); Count VII (civil conspiracy); Count VIII (civil RICO claim); Count IX (quiet title); Count X (mistake); Count XI (unconscionability); Count XII (UDAP), except to the extent that the claim is based on alleged TILA and HOEPA violations; Count XIII (failure to act in good faith); Count XV (IIED & NIED); and the portion of Count XVIII (ECOA) based on the failure to provide a copy of the appraisal.

The Motion is DENIED as to Plaintiff's TILA rescission claim in Count III.

Plaintiff has until **September 22, 2011** to file a motion seeking leave to file a First Amended Complaint. The Court CAUTIONS Plaintiff that, if she fails to timely file a motion seeking leave to file an attached First Amended Complaint, this Court will automatically dismiss all of Plaintiff's claims, with the exception of the TILA rescission claim, with prejudice. In that instance, the case will proceed on the TILA rescission claim

alone.

        IT IS SO ORDERED.

        DATED AT HONOLULU, HAWAII, August 31, 2011.



            /S/ Leslie E. Kobayashi

            Leslie E. Kobayashi
            United States District Judge

**TRINIDAD C. ENRIQUEZ V. COUNTRYWIDE HOME LOANS, FSB; CIVIL NO. 10-00405 LEK-RLP; ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT COUNTRYWIDE HOME LOANS, FSB'S MOTION TO DISMISS, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT**